This is a case of illegal reentry under 1326, and I'd like to start by discussing the question that the court asked the parties to be prepared to talk about, and that is, which, if any, of the court's existing precedents should be overruled under Miller v. Gammey and its progeny? The short answer is this. This court has a series of cases holding that the lack of a considered and intelligent appellate waiver satisfies 1326d.1 and 2. Those cases are not clearly irreconcilable with Palomar-Santiago, and they should not be overruled. I'd like to point to three specific places in Palomar-Santiago that confirm this, and I'll discuss them, but in short, those three are Palomar-Santiago quoted a specific quote from Mendoza-Lopez. It repeatedly referred to the substantive or substantively nature of the challenge in that case, and it discussed the specific exhaustion exceptions in Ross v. Blake. So to begin with the first one, on page 1619 of Palomar-Santiago, it specifically quotes the language from the Supreme Court's decision in Mendoza-Lopez, which said that a challenge should be permitted where the deportation proceeding effectively eliminates the right to an appeal. And that effectively is the operative term here, because it basically shows that we're talking about a pragmatic, real-world opportunity to exhaust administrative remedies and judicial review. So the fact that Palomar didn't disagree with that language and, in fact, quoted it shows that it's not clearly irreconcilable. Second, Palomar-Santiago specifically and repeatedly used the word substantive or substantively. For instance, it talked about the substantive validity of the removal order, the substantive basis for appeal, the substance of an IJ decision on the merits, and a substantively unlawful removal order. What this shows is that Palomar-Santiago was really about saying that you can't use a substantive challenge, for instance, is a conviction an aggravated felony, to satisfy D-1 and D-2. But that doesn't have anything to do with whether you can say that a procedural defect, such as the lack of knowing an intelligent appellate waiver, satisfies D-1 and D-2. So you're saying that Palomar-Santiago really doesn't have any impact on this case. Exactly. Okay. That's correct. And then the third, just very briefly, Your Honor, thing that Palomar-Santiago does is it discusses Ross v. Blake. And Ross v. Blake has dealt with a statute that used similar language, available, available remedies. And Ross v. Blake said that despite that language and despite saying that the requirements were mandatory, that that available language meant that there were still these three exhaustion exceptions that could be met as a practical matter. And here, at least two, if not three, of those exhaustion exceptions are met by the fact in this case. Can I ask a question? Certainly. You've done a really good job on this part. I just want to make sure the only way we need to reach this is if we find that the underlying crime was not a crime of violence, right? That's correct. If we say it was a crime of violence, that would be the end of what we needed to address. That's exactly right. And I will move to that. Sure. Essentially, in our brief, we set forth two reasons why this is not a crime of violence. The first reason is that Ohio assault specifically uses a very broad definition of attempt, which does not include an intentional mens rea. And all of this Court's case law, specifically Gomez-Hernandez, says that the crime of violence definition requires an intentional mens rea. But in Amaya, we said that general mens rea was okay because what you have to do, as I understood the case law, you have to map up attempt and see whether attempt matches up. And then if attempt matches up, then you look at the underlying crime. And one concern I have is that if we adopted your argument, wouldn't we be conflicting with the Sixth Circuit, which has said that this very statute is a crime of violence? So first to the Sixth Circuit, Your Honor. The Sixth Circuit has never addressed our attempt argument. And so while the Court would have. It has said the underlying crime itself is a crime of violence, correct? It has said it is a crime of violence, but for different reasons. So you're not disagreeing with that. You're saying it may or, well, I don't know if you're disagreeing with that, but you're saying that's not relevant because we're looking at attempt, so this is a different issue of whether attempt maps up. We are making two arguments that it's not a crime of violence. One is the attempt argument. The other is the de minimis or offensive touch. The Sixth Circuit has reached the de minimis touch argument. So if the Court agrees with us on that, it would be creating a split as to the reasoning. But it would not be creating a split as to the attempt argument. And specifically, I think either way, you know, if the Court finds one of those reasons that we are — that the statute is overbroad, it doesn't need to reach the other one. As to the attempt, and going back to Your Honor's question about Amaya, I would — I have to confess I'm not completely familiar with the details of that case. But I would point this Court to the Supreme Court's recent decision in Taylor, which was an attempted Hobbs Act robbery case. And in Taylor, the Supreme Court expressly rejected this idea that we look to the crime and then we use, well, is it an attempted version of that crime? And so — No, but I thought the test was we take this in two stages. Does attempt under the state statute match up with attempt under the federal statute? And both require general intent. I would respectfully disagree, Your Honor, because this Court's decision in — You disagree that that's the analysis, or you disagree with my conclusion? I agree with Your Honor that we have to compare the state definition of attempt with the federal generic definition of attempt. But I would disagree because I believe that this Court has held in numerous cases, in Gomez-Hernandez and Gracidas-Uliberry, in Dominguez, that the crime of violence definition for the attempted crime of violence requires an intentional mens rea, and the Ohio definition only requires knowledge. I see. Yes. So unless this Court has further questions on those points, I'll reserve the remainder of my time. Very well. Thank you, Your Honor. I'll invite Mr. Howe for the government, please. Good morning, and may it please the Court. I'm Zach Howe for the United States. I will start where my friend, Ms. Hartzler, did, and that is with Palomar-Santiago and Valdivia-Flores. On reflection in preparing for this argument, I agree that on D-1 and D-2, it's an uphill battle for us to argue that Palomar-Santiago and Valdivia-Flores are clearly irreconcilable. What I do want to note is that on D-3, prejudice, if the Court interprets Valdivia-Flores the way that Alvarez is asking you to, then I think you would be forced to conclude that it is clearly irreconcilable with Palomar-Santiago on that issue. The reason I say that is because Alvarez's argument is that Valdivia-Flores implicitly held that prejudice can be presumed when you're wrongly removed as an aggravated felon, but nevertheless would have been removed from the country because you had no status. So in other words, you are getting rid of D-3 in that scenario. So if you read Valdivia-Flores that way, then that runs straight into Palomar-Santiago's conclusion that every prong of 13-2060 is mandatory. And this Court has said in Miller v. Gamme, the cases don't have to be addressing the exact same issue. If it undermines the mode of analysis and the reasoning, that is enough to conclude that the case is overruled. That is exactly what would happen if you adopted this interpretation of Valdivia-Flores. Now, our argument is you don't have to go that far because Valdivia-Flores had absolutely nothing to say about this prejudice issue. You won't find a single sentence in the briefs or in the opinion where the Court addresses what happens when you have someone who has no status in the country who is removed on an improper ground but would have been removed anyway. Now, my friend on the other side does cite some passages from the defendant's brief in Valdivia-Flores, but respectfully, they simply don't address this issue. All they say is that if you're removed on an improper ground, the defendant suffers prejudice. They don't, and they're relying on cases from the LPR context, they don't address what happens when the individual lacks status. That's why in Mangus, the concurring opinion by Judge Lee says, look, the issue wasn't teed up, there's no analysis, it was accidental, it was inadvertent. I agree with all of that. Respectfully, the only thing I disagree with is the conclusion, which is that it was binding authority on this question that it had no analysis on. Supreme Court authority is very clear on this. When an issue merely lurks in the record, it's not accidental binding precedent, it's no precedent at all. And I think this Court can look to the Brecht v. Abraham decision from the Supreme Court because it deals with a very similar issue. There, the Court says, look, we've applied the Chapman harmless error standard in a handful of our cases, but we have never addressed what happens or whether that standard actually should apply. So the Court says we're free to address that issue, and then it goes on to apply a different prejudice standard. We'd ask you to do the very same thing here. Yes, Valdivia-Flores said this is not a crime of violence, therefore there's prejudice. That's a conclusion that comes from the LPR context. But it never gave a sentence of analysis to whether that conclusion should apply when you're dealing with someone who doesn't have status. So this Court is free to reach the issue, and it should agree with every circuit to address this issue, the 1st, the 5th, and the 10th, and hold that prejudice can't be presumed. That is consistent with the plain text of the statute, and it's consistent with Palomar-Santiago, which says every prong is mandatory. So can I move you back to Gomez-Hernandez? They are opposing counsels arguing that that stands for the proposition that the federal definition of attempt requires specific intent. State statute here is general intent, therefore they don't map. What's your response to that? Sure. I agree that at common law, attempt is a specific intent crime. I also agree that generally speaking, this Court, all courts, try to interpret federal law consistent with the common law. However, it doesn't always fit. In fact, in Johnson, the Supreme Court rejected applying the common law to the physical force element of the same statute. Now, this Court has only addressed this specific issue in one case, and it was not Gomez-Hernandez. In that case, you had a state statute dealing with specific intent for the attempt crime. So the Court didn't need to reach what it acknowledged. But you're saying the Arizona statute, an issue in Gomez-Hernandez, you acknowledge that's different than the general attempt statute here? Yes, and that statute would have met the federal definition on the mens rea element, no matter what the federal definition was, because the Arizona statute has the highest level of intent. It has specific intent. The only case that has addressed a state assault statute that has a general intent requirement for the attempt crime is Grajeda. What was it? Grajeda. That's the case addressing the California assault statute. And in California, the attempt crime is a general intent crime. And this Court said that that intent was sufficient to qualify as a crime of violence. But I thought California was different because there the state Supreme Court had said there's no separate attempt. I thought there was a wrinkle in there that there was actually not a specific attempted crime. It was all wrapped up in the same issue. So the statutes are actually the same. This is actually just a matter of terminology. Technically speaking, it's true. There's no attempted assault. Really, there's no attempted assault anywhere. Common law, battery is the actual completion of the striking, and attempt is either threatened or incomplete attempts to strike. But under modern-day statutes, and this is true of both Ohio and California, they simply define assault to include battery and the actual assault, which is the attempted battery. So in both California and Ohio, you have the completed striking of another, and you have attempt, which is trying to strike another or cause physical harm to another. So that's just a matter of terminology. But substantively, these statutes are the same. Both have an attempt to cause physical harm to another. Both require general intent. And because this court upheld the California statute, which has that same mens rea requirement for the same type of crime, then I think that case is dispositive here. Now, to the extent there's tension in that case and others, perhaps that can be addressed down the road. What about a MIA? Does a MIA control here, or is that distinguishable as well under Washington law? Because a MIA said that knowledge does meet the mens rea of the criminal statute, but perhaps Washington is different than what we're dealing with here. And to be honest, my recollection was that a MIA wasn't dealing with an attempt crime, but perhaps I have that wrong. To the extent it was, and it was saying general knowledge. Well, you're right. It was accomplice liability. But I guess I'm wondering how much of an analogy accomplice liability would have to attempt, where you're not actually doing the underlying crime, but the question is, is the accomplice liability part specific intent? But if you're not, that's fine. We can move on. I suppose the best I can say is that, you know, inchoate crimes typically have the same mens rea requirement at common law. And so to the extent this court is holding that another inchoate crime, you know, it could suffice to have general intent. And I suppose it's supportive in that sense. Again, I point. If we address the Sixth Circuit case in Raymoor, would we be creating a circuit split, or do you agree that there is, I mean, I know you don't agree we should not follow the result, but do you think it's possible to rule for Alvarez here and not create a circuit split with the Sixth Circuit? Well, at a broad level, you would be in the sense that you'd be saying Ohio assault is not a crime of violence, whereas the Sixth Circuit has said multiple times that it is. Well, but we might not be because we'd be saying that attempt is not a crime of violence. Well, it's all an element of Ohio assault. It's, you know, baked into, you know, causing or attempting to cause physical harm. That specific statute has been upheld by the Sixth Circuit, so I think it would be a circuit split in that sense. I do agree with Ms. Hartzler that the Sixth Circuit, while it has addressed the physical injury portion of her argument, it hasn't addressed the mens rea portion. Let me ask you this. Let's pretend for a moment that you're us, and you had to write a holding. From the government's perspective, how would that holding read, and what would be its reasoning? Certainly, and are we talking limited to the crime of violence issue? In this case, in other words, you're going to explain the result in Alvarez, it should be X, and this is Y. Briefly state it, please. So as to the crime of violence, I would write we are bound by grajeda as to the mens rea issue. I would write that Evans, Glover, Ramor from the Sixth Circuit have all persuasively rejected the physical injury argument, and therefore we follow those cases as to the physical injury argument. Therefore, Ohio assault is a crime of violence, and the case is over. Now, the alternative I'll give you is I think the court can easily write Valdivia Flores had absolutely nothing to say about prejudice. Therefore, we address whether prejudice is required. Palomar Santiago says every prong is mandatory. Therefore, prejudice is required. Here, Alvarez cannot show prejudice because he can't show he had a reasonable grounds for obtaining voluntary return. And I gather you also agree that under your scenario, we don't need to get to Miller v. Gammie. The only scenario where you get there is if you find that Ohio assault is not a crime of violence. And then, again, I'd urge the court to go straight to prejudice. And there I don't think you get to it because I don't think Valdivia Flores addressed this issue. Very well. Other questions about my colleague? Thank you very much. Thank you. So, Ms. Hertzel, you have a little rebuttal time. Thank you. Quite a bit of rebuttal time. So I would like to start off by saying that the roadmap that my opposing counsel just gave to the court is unfortunately foreclosed by binding case law on this panel. And I'll walk through it. Gomez-Hernandez. Gomez-Hernandez. The en banc decision in Grecidus Ulibarri. And specifically two years ago, this court held in Dominguez specifically as to the intent definition. A defendant must intend to commit every element of the completed crime. Intend to commit. So the government is essentially saying, well, knowledge is enough. But, frankly, unfortunately, this panel does not have the authority to overrule these three binding cases as to intent. So what about Grajeda, California statute? Sure. Tell me, I think the distinguishing factor is California attempt is a weird behavior. There's no such thing as attempted California assault. That has been held for 50 years. Now, the other thing about Grajeda is that it used a different generic definition. It used the use of force definition, not the attempted use of force definition. And so it is absolutely true that Grajeda said knowledge is enough as to this element of the injury or the harm against another person. But Grajeda was only dealing with the use of force definition. Initially it said, well, this looks like it might be able to satisfy the attempted use definition. But then it ultimately only used the use of force definition. And because that does require a lower mens rea, it could satisfy it. But here the government actually conceded in their brief that Ohio assault doesn't satisfy the use of force definition. We're only dealing with the attempted use definition, which requires intent. And this court's precedent requires it to find that the Ohio statute doesn't meet that. Now, I'd like to specifically talk about the Palomar issue. It appears that the government is saying, well, Palomar doesn't overrule as to D-1 and D-2, but it can overrule as to D-3. The reason that is not correct is because D-3 was never at issue in Palomar. Now, I agree with the government that if we only had a situation here where the question was, did the agency say this was an aggravated felony when it wasn't? If that's all we were dealing with, the government is exactly right. Palomar would control. But we had the additional fact that this was not a knowing and considered an intelligent waiver. And that's exactly why D-1 and D-2 are satisfied here. Now, prejudice was simply never at issue. Palomar never discussed D-3. And as to Valdivia Flores, while the government may wish that it had briefed the issue there, frankly, it forfeited the issue there. It waived it. The petitioner there actually did brief it. The Valdivia Flores said we are holding that prejudice is enough. And under this court's precedent, that's why it is bound to rule in our favor. And unless the court has any further questions, I will submit. Any other questions? Thanks to both counsel for your helpful argument. I think it would be interesting to have a lot of criminal law students hear these arguments. If you want to hear about men's rent, you two know it, and we are grateful for your help. Thank you very much. The case, as argued, is submitted.
judges: SMITH, NELSON, UNKNOWN